Okay, Ms. Bach, please proceed. Good morning, Your Honors. Blythe Bach on behalf of the City of Los Angeles. I acknowledge that this is a tough appeal. I get that. Because I understand that this is a discretionary ruling that is normally not reversed. But I think that this is a very... Can you speak up just a little bit? Speak up? Yeah, please a little bit. I'm rarely asked that. I know. Well, this time we are. Okay. My voice is usually very loud. I actually try to make it a little bit more quiet. I think when this room was set up, they didn't do an audible test. Okay. All right. I'll go to my... Put it in the middle somewhere. Well, I think that this is a very unusual case. Because to me, the most dispositive moment is the Staples video at 907-51. It's in my reply brief at page 27. Because it's at that moment that we see Mary Queen happily walking and chatting with her friends. And that moment is more than two, almost three minutes after Rico's shot. But doesn't... Your argument seems to depend on us agreeing that Rule 60B-2 allows the district court to set aside the judgment if there's conclusive evidence. Sort of a conclusive evidence exception, which you're arguing that this video shows. She couldn't have been shot at the time she alleged she was walking along. But there's nothing in the rule that says that. Is there anything in the text of the rule from which we conclude there's a conclusive evidence exception? There is not, and that's why I'm relying on the Farrell case. And the Farrell case has simply not been applied in the Ninth Circuit. This is the chance. The Farrell turn on... It was vague as to which portion of Rule 60 was being invoked. And then the Fifth Circuit later concluded that it was 60B-5 because it was the satisfaction of a judgment. And then the Fifth Circuit then rejected the notion of a conclusive evidence instruction. I mean, I see your two cases are Walsh's and Farrell, and both seem problematic given what those circuits did subsequently. And that is correct, and I know that Marroquin relies on that. But that is what the Fifth Circuit has done. We are the Ninth Circuit, and we can do whatever we want with Farrell. Okay. So your argument is your two best cases are from the Fifth and the Seventh Circuit. Those circuits have not continued on that path. But never mind. It's not precedential. So non-precedential cases from other circuits, why are we even talking about them then? As I understand your position, because the Fifth Circuit said, no, that's 60B-5. That's the Fifth. We're the Ninth. But where does that lead us with some Ninth Circuit authority or anything in the rule to suggest that there is this exception that when the rule says you need to have reasonable diligence, that doesn't matter. As long as the evidence is really powerful, it's okay. Well, what those cases talk about is how the role of the courts is to do justice and that it would not do justice. If we have a judgment that we know is erroneous, here we have a judgment that finds an individual officer liable for excessive force, and we have a video that shows that that same officer. But due diligence would have addressed this. I mean, I personally, if I were the trial judge, might have come out with a different decision in this case. But we're talking about discretionary call, and it could have been avoided had due diligence been followed. And that's true, and I'm certain that the trial attorneys are kicking themselves for not thinking about the Staples videos. I understand that. But that's where I cited those cases where they do talk about the due diligence, that when it comes to a matter of justice and something that's so dispositive, that the diligence factor is lessened. So do you, there's a couple of things about your briefing that are a little confusing to me. Did you agree in your reply brief that you're not challenging the district court's conclusion that the defendants did not use due diligence, that they could have, in fact, discovered the Staples Center video much earlier? I'm not challenging it, and mostly I'm not challenging it because, let's face it, there is a wealth of case law that defers to district court rulings in these circumstances. And so it seems not worth it to me to try to challenge the due diligence finding. And that's where I started off saying I acknowledge it's a difficult appeal. All right. So then the other issue is you make arguments about the retrial just damages, but is that moot if we conclude that there is no conclusive evidence exception? Does your appeal hinge on the conclusive evidence exception, and if we decide that against you, the rest of the issues go away, or do you still think there are other issues that survive? You mean whether we would be happy with an order to have a new trial only limited to damages, or what are you asking? No, you're arguing that the new trial should have covered liability and damages, and you wanted the Staples video to be presented at the new trial. But if it were that the new trial was not going to include the Staples video because we don't find a conclusive evidence exception, you still want the new trial on damages? Well, what we want is a new trial on liability. Oh, I understand that, but that's not my question. So just assuming for the sake of our discussion that we say we don't see a conclusive evidence exception in Rule 60b-2 and the district judge should not abuse his discretion in excluding this evidence, you have a second argument that the liability and the damages are so intertwined that it should have been a whole new trial, not just damages. Right. So assuming you lose on the first point, you still want the second trial just on damages? I want the second trial to be liability and damages. I know, but that's not my question. I understand that's what you want, but assuming it's not going to be liability, do you still think there's a live issue as to whether there should be a retrial on damages? Yes, and I'll tell you why, because the Staples video is not just germane to liability, although, of course, that's the most significant part of it. It also is germane to damages because if you look at it, you see her getting trampled by the crowd, which was our theory in the trial that the cause of her injuries, because we don't dispute that she was injured, but our theory at trial was that those injuries arose because she was trampled by the crowd. But didn't her friend testify that she was trampled? Yes. That evidence was already in, so the jurors heard disputed testimony about whether she was shot with the rubber bullet or not and then heard her friend say the bullet overwhelmed them, they were trampled. So they already knew that. Right, and so to me, the damages would be significant for the Staples video, both because it shows her happily walking after he shot his launcher and then her getting trampled by the crowd. So I think that that does go to damages. I want to clarify. My colleague has raised this question, but you seem to be dancing around. I want to be sure we understand each other. If I understand what you said, you conceded effectively before the trial judge and now to my colleague that the city didn't exercise due diligence. Had you done that, you would have discovered the video and might have changed everything. But you didn't. My colleague then asked you whether, in fact, in order to win on the liability issue, there has to be a conclusive evidence exception to 60B2. I think your answer to that is yes. Is that correct? It is, but let me also note that the case law, and I cited it in my brief, I believe it's at page 10, there's a wealth of case law that says no matter what subdivision was cited, that's not dispositive. And here, even if we want to go to... It's not dispositive because of justice. But, as we all know, if you had an opportunity through due diligence to find this evidence, which anybody would have known around the Staples Center, lots of videos, lots of videos, but you didn't do that. That was your safety guard. That was your justice, if you will, but you didn't do that. So here you have a situation. You're asking us, in effect, to change Rule 60B2, adding conclusive evidence exception. We don't have that in the Ninth Circuit. If we don't adopt it, I don't see how you can possibly get a new merits trial, a liability trial. What am I missing? Well, I think 60B5, which is what the Fifth Circuit has now said. Forget the Fifth Circuit. Let's talk about us. Okay. So then I would say that the alternative is that Rule 60B5 has a much more expansive and doesn't have even the requirement of due diligence. I'm sorry, what? Did you argue 60B5 at the district court? No, and that's why I brought up those cases saying that it doesn't matter, even if the wrong subdivision was cited in the trial court, that the revealing... Okay, well, let's talk about 60B5. How does that help you, given you didn't use due diligence, given that 60B2, which is really the one that we're focused on, has no conclusive evidence exception? How does 60B5 help you? Because 60B5 is more of the discretionary, all-encompassing rule. In this case, the district judge said, Nope, sorry. So how does that help you? Well, because the district court judge was specifically ruling on B2. Right. What I'm saying is that it's in the discretion of the judge. So since you didn't use due diligence, why would the district judge be inclined to help the city of Los Angeles, which regularly pays out massive awards in a situation like this? Well, because of the justice required by the revelation of the Staples video. Right? And I do think that there's a lot of cases that talk about that, that in the end of the day, that is the court's, and particularly the reviewing court's job, is to make sure that the judgment does reflect. I mean, you can lose a judgment, but we lost a judgment even though we have evidence showing it. Are you telling the court you want all your eggs in the 60B5 basket? Is that right? No. My first egg is 60B2 and Farrell, even though Farrell was on just, it was strange the way Farrell only cites 60B, that doesn't even cite a subdivision. So my position is that this new evidence, that because it was so dispositive, that we should have been entitled to a new trial, and alternatively that if we want to just even disregard the due diligence issue, it would be B5, which is a much more expansive and allows the opportunity to do justice. So you're relying on this notion that the court should achieve justice as one of the goals emanating Rule 60. If this is going to be unjust, this is a reason why you could set aside a judgment. But doesn't Rule 60 also advance finality? So there's no limiting principle on what you're arguing, from what I can tell, that at any point, regardless of how the evidence comes to light, we should just invoke justice and set aside the judgment. But the rules seem to be a little more nuanced than that, and that certainly there's an interest in achieving justice, that's beyond dispute. But the rules have deadlines and qualifications and factors that need to be met, because finality is also a very important consideration. And so when the rule allows you to set aside a judgment for newly discovered evidence that could not have been discovered, that's justice. If there was a reason why you couldn't have found it, then it would be unfair to not let you bring that evidence forward and set aside the judgment. But you could have found it. You didn't. And so there are other remedies for the client. They have other remedies against their counsel, for example. So justice is not completely gone here. You just didn't meet due diligence, and then we have a competing concern of finality. Well, and I understand what you're saying, but I wouldn't be standing up here if it weren't the fact that this evidence is so dispositive and does literally call into question the validity of the judgment. And I just think that we cannot stand by and hold an individual liable for excessive force when we have a video showing he didn't use any force at all. And so, you know, the cases where they defer to the due diligence, most of them are they talk about how we're going to defer, we're going to defer the due diligence, and by the way, this evidence wasn't dispositive anyway. And that was the case in the Baxter case, for example, which both the district court case cited and Meriquin. And they declined to reverse, and they deferred to the due diligence finding. But they also said, and by the way, this evidence is not dispositive. But don't the plaintiffs dispute whether it's dispositive? You know, there's like a splicing of body cam footage and Staples video, and I thought I read in their brief that they dispute that. So it hasn't been established before the district court or before us that this is conclusive. Right, and that's where I tried in my reply to give you screenshots so you could literally see Meriquin walking after Rico fired his launcher. And this all depends on timing, right? So how do we know that these videos are all synced on the same clock? Well, it is kind of frustrating because the body-worn video is on a different time stamp than the Staples video. But you can look at this consistently within the Staples video is you see the launcher light up on the upper left corner of the screen, and I think it's at 9.05.21. And you see that, and that's him shooting. And we have testimony from her that Rico was the only one on the scene, and that's at page 21. We have Rico testifying that when he shot his launcher, it lit up. And we can see that on the Staples video. And then I think it's 2 minutes, like 40 seconds later, Meriquin enters the area, and we see her with her friends. And so even within that Staples video, it's consistent, and we can see that she's entering the area where Rico was. Basically, the Staples video, it corroborates not only Rico's testimony, because remember, Rico testified that he fired the shot at this guy in the white hat that was to the left of the tree, and that guy in the left hat was not in the body-worn video. Now we have the Staples video showing that guy in the white hat. It also corroborates Meriquin's testimony, because Meriquin testified that she didn't see Rico. And that makes sense that she didn't see him, because he was gone already. He had gotten into his police car. He had already done his shot. So she didn't even see him. So it corroborates her testimony and his. And so the city's position is we can't stand by and allow a judgment holding an individual liable for excessive force when we have video that shows he didn't use force at all. Thank you for your argument. Let's hear from Mr. Stevens. Thank you, Your Honor. May it please the Court. My name is Stephen B. Stevens. I represent Ms. Meriquin. I'd like to get right to the heart of two points. One, there was no due diligence, and there's no exception for supposedly conclusive evidence, and we do in fact dispute that the evidence is conclusive. But I'd like to get perhaps right to the point with one of the Court's questions, and that is, as the city reads 60B, it wipes out all of the subsections. It means, according to the city, that if they can come up with conclusive evidence, or what they claim to be conclusive evidence, that it doesn't really matter what subsection they throw it into. In fact, this argument is patent if you take a look at their reply, where they, for the first time in the reply, they argue 60B-6. 60B-6 says that the Court may relieve a party from a final judgment for any other reason that justifies relief. The Ninth Circuit has not addressed that kind of argument under 60B-6, but the Eleventh Circuit has, in the United States v. Real Property and Residence, quoting Moore's Federal Practice, 60B-6 is something that you use when the basis for your motion for relief does not fall within any of the other five categories. And Wright and Miller in Federal Practice say that the first five categories are mutually exclusive. You have to look to see what is the basis for relief. The basis for relief is that they say they have new evidence. If they have new evidence, they have to show due diligence. And as the district court here found, there was an appalling lack of due diligence. They certainly knew about Staples Center videos. Mr. Rico certainly knew about it. He works security there. As a matter of fact, if you look at his carefully crafted declaration, he doesn't say that he was unaware of the cameras. He says he was unaware of how long they keep the videos. Well, as we pointed out in our brief, according to the police, they made about 76 arrests that day. I would think that they would be searching for video from any source to prosecute those people. They didn't search the cameras. And they have no excuse for failing to do that. And even today, we hear that we don't really need an excuse if we say that the videos are conclusive. They're not. As I understand their argument, we don't have to look to Rule 60b-2 in newly discovered evidence with due diligence. We could rely on 60b-5. And there is some language, I think, in fairness, that supports what they're saying. I mean, 60b-5 says the judgment has been satisfied, released, or discharged. That's not the case here. It's based on an earlier judgment that has been reversed or vacated. That is also not the case. But then the last prong says, or applying it prospectively is no longer equitable. As I understand your argument, you're saying that that doesn't work because these subsections are distinct? Yes. Or is there any case law that tells us what applying it prospectively is no longer equitable means? I don't know if the Fifth Circuit has actually expanded on that. I mean, they are the ones who promulgated Ferrell, and they're the ones who dialed it back as well. So I don't know if there's any authority on that specific point, Your Honor. But what we do know is that the courts have said, with regard to 60b-6, their new argument in the reply is that that's a catch-all for anything that doesn't come up on the first five. And it would do violence to the other sections to say that we have – And as one court has described it, these rules are not – are not scrivened out lightly. They are thought up. Conferences, committees, they go to Congress. They are well thought out. And to start to engraft exceptions to them actually undermines the entire rulemaking progress. Would there be a sufficiently egregious case, though, where it would be an abuse of discretion? Let's say Ms. Marroquin, after the trial, admitted, I made all of this up. And the other side didn't take her deposition, decided for whatever reason not to take her deposition, so didn't get her saying that under oath. And you really have a case where the plaintiff says, I made it up. Would that be enough? Your Honor, your question reminds me of what we learned in law school. Hard cases make bad law. I guess I have to – nothing is 100%. I'd have to – conceivably, there could be some egregious case where it would cry out for a retrial or vacating of the judgment or something like that. I don't want to say that our position is so extreme that we can exclude that possibility. But I would also say – Well, because this is not a perfect comparison. But in the area of the death penalty, if someone is actually innocent, it doesn't matter if there have been procedural defaults along the way. And we say, wait, there are these rules. We matter if the person is factually actually innocent. I agree, Your Honor. And maybe that is the best example of the extreme case. When someone's life is in line, we have to be a bit more flexible. But that person can't bring a malpractice claim against their attorney if they've been executed. That's absolutely correct. There are no remedies there if you're going to be executed as opposed to there are remedies. Yes, I agree. And, in fact, as I read their explanation for why they did not do what they did not do, my reaction was much the same way. They have a remedy. File a malpractice action against your counsel. I don't know what's happening behind the scenes between the city and its counsel. But it is very clear that, for whatever reason, Mr. Rico did not investigate, and he is actually part of the security team at Staples Center. He's the guy that they would have gone to in the first instance. There is no declaration from counsel, as a matter of fact. When I was reading the record, I thought it struck me as unusual. There is no declaration from the defense counsel stating that we didn't know anything about cameras or videos. Typically, when a party seeks to overturn a judgment with new evidence, just by California practice, for example, the attorney says, I didn't know this because this is what I did, and I couldn't find any information on it. There is a showing by counsel, as well as the client, of due diligence. That's missing here. And that makes this distinct from, by the way, the Wallace case, where counsel put in a detailed declaration of what they did to find the witnesses from 35 years earlier. So bottom line, from your perspective, 60B2 includes a due diligence requirement. Yes, Your Honor. In this case, you've got an officer, in the case of Rico, who works there all the time. He knows perfectly well there are video cameras all over the place. Yes, Your Honor. They didn't check it out. Counsel didn't say, we've done a diligence search. We don't find anything. We all know that in many, many instances, many types of law, that trial courts are called upon to make a determination whether parties have acted with due diligence. It happens in discovery all the time. It happens in decisions on the pleadings. You're saying this is really no different here. If they had acted with diligence, we wouldn't be here. There wouldn't be a problem. There would have at least been an argument whether the cameras were accurate and the like. But in this case, they didn't qualify. From your perspective, there is clearly no conclusive evidence exception to 60B2, and end of story. Is that your position? That is, in a nutshell, our position, Your Honor. I can go on at some length about why the evidence is not conclusive at all. Mr. Rico had three different stories about him shooting that 40-millimeter launcher. One is that he shot it at somebody who looked like he was about to throw a bottle. The second one was that he shot it at someone who threw past tense a bottle. And then his third story was that the rubber bullet hit the wall behind that person. So he either was he also said that he saw the person react being hit. So Mr. Rico's testimony goes all over the place. The most recent iteration in the motion to vacate for relief was that the bullet hit the wall, which means that he missed. Well, it may not hit the wall, but it probably hit Ms. Merican because she testified. She felt it being hit by a rubber bullet. She had immediate pain. Blood was gushing from her head. And she saw the rubber bullet on the ground. There's nothing inconsistent with her getting up and walking to get out of the area to say that, well, she was happy. She was happily walking. I don't know where the defendants got that notion. But certainly being hit by the rubber bullet, being dazed for a while, disoriented, and then getting up with the help of a friend and trying to leave the area does not disprove conclusively that Mr. Rico shot, used that launcher, shot it, missed his target, and then hit Ms. Merican. But doesn't Scott v. Harris say that when there is video evidence, the courts are entitled to view it and they don't have to accept contrary testimony as establishment facts? So Ms. Merican testifies to all these things. But if there is actually a video that shows that's not how it happened, and if it had been introduced properly, maybe we wouldn't be here. But doesn't that mean that whatever she testified to doesn't really matter if there's video evidence? If there's video evidence that actually contradicts, but this doesn't actually contradict because there's nothing inconsistent with being hit with the bullet off camera and then later, two minutes later, being seen walking away from the area because she was hit. The defendants apparently expect that if she was hit, she'd be down on the ground and, you know, attended to by an ambulance crew. That didn't happen. And Ms. Merican says, I was hit in the head, I was down, I got up with the help of my friend, and we left and we tried to leave the area. So from your perspective, even if you look at the video, the fact is it is not conclusive evidence that your client was not hit by a rubber bullet and it does not basically prove the case for them. So even if there were an exception, it doesn't necessarily decide this case from your perspective. It's stated far more succinctly than I did, Your Honor, but that's exactly correct. I have some time left. I'm happy to entertain any questions. I have a question on this second trial on damages. Is your position that the defendants waived their Seventh Amendment right because they moved for a new trial? They initially moved for JNOV or, in the alternative, a new trial on damages only. The court denied their JNOV motion and granted their new trial on damages. And, by the way, Ms. Merican also wanted the judgment amended to reflect the $1.5 million. In the alternative, a new trial on damages only. The court gave both parties what they wanted. Did anybody argue before the district judge that it should be a new trial and it should be inclusive of everything, liability and damages,  that the jury needs to hear it as one? Was there any argument like that? No, Your Honor. The response was the exact opposite. As a matter of fact, to the jury, the defense counsel made a comment saying, we know she's injured. The question is, how badly? The question is, did we do it? We know she's injured. Her injury was testified to by a neurologist, a physician. By the way, the physician, when she gave a history, within 12 hours after the event, she gave a history to the physician that she had been hit by a rubber bullet. That actually contradicted the defense counsel's argument to the jury, saying she only says a rubber bullet because she's seen the video multiple times. See yourself. She's making it up. I mean, at its core, the defense doesn't come out and say it, but at its core, they're questioning her credibility. And the jury had all the evidence, had all the testimony, all of Mr. Rico's contradictory testimony, and it came to the correct conclusion. I have 18 seconds left. Other questions? I think we're all set. Thank you very much, Your Honor. Ms. Bach used all her time. Let me ask my colleague, too. If either of you have additional questions of Ms. Bach, shall we give her a rebuttal? I don't think so. I think we're going to thank you very much for your argument. I think we're in good shape. Thank you both for your argument. Thank you, Your Honors. Thank you, Mr. Arnn. The case of Marrakeen v. City of Los Angeles is submitted.
judges: SMITH, BADE, Fitzwater